■ In the Matter of JOHN MARKUS, Appellant, v ASSESSORS OF THE TOWN OF TAGHKANIC et al., Respondents. [806 NYS2d 295]—

Crew III, J.P. Appeal from a judgment of the Supreme Court (Stein, J.), entered November 23, 2004 in Columbia County, which, inter alia, in a proceeding pursuant to RPTL article 7, granted respondents' motion for summary judgment dismissing the petition.

Petitioner owns seven parcels of real property located in the Town of Taghkanic, Columbia County. In July 2002, petitioner commenced the instant proceeding pursuant to RPTL article 7 to challenge the assessments of those parcels on the 2002 tax rolls, contending that such assessments were, among other things, unequal and excessive. The petition subsequently was amended to eliminate the excessive taxation claim, and petitioner proceeded on the ground of inequality. Respondents then moved to dismiss the petition pursuant to CPLR 3211 (a) (7) and for summary judgment pursuant to CPLR 3212, and petitioner cross-moved for summary judgment. Supreme Court granted respondents' motion for summary judgment and denied petitioner's cross motion, prompting this appeal.

We affirm. "Assessment review proceedings involving the issue of inequality are limited to determining whether the property at issue has been assessed at a different percentage of its

full value than other properties within the same taxing unit" (*Matter of Consolidated Edison Co. of N.Y. v State Bd. of Real Prop. Servs.*, 255 AD2d 8, 10 [1999] [citation omitted]). Thus, in a proceeding such as this, the petitioner must establish both the level of assessment for the entire community and the fair market value of the property under review. To that end, RPTL 720 limits the acceptable methods via which an assessment may be proven to be unequal and includes, insofar as is relevant to this appeal, proof of "actual sales of real property within the assessing units that occurred during the year in which the assessment under review was made" (RPTL 720 [3] [b] [2]).

The dispute here centers upon the construction given to the phrase "during the year in which the assessment under review was made." Petitioner, interpreting the phrase literally, submitted a sales ratio study of "all arms-length real property sales that occurred in the town between January 1, 2002 and December 31, 2002" to demonstrate the inequality of his 2002 assessment. Respondents' expert, on the other hand, reasoning that "[t]he sales to be considered in an inequality sales-assessment ratio study must be the same sales that could have been considered by the assessor for the completion of the applicable assessment roll," based his analysis upon sales that occurred during 2001.

To be sure, the rules governing statutory construction and interpretation require us to afford the words contained within a particular statute their plain and ordinary meaning (*see Matter of New York State Elec. & Gas Corp. v Public Serv. Commn. of State of N.Y.*, 308 AD2d 108, 114 [2003]), but that principle does not empower us to interpret a statute in such a way as to reach an absurd result (*see Matter of R.A. Bronson, Inc. v Franklin Correctional Facility*, 255 AD2d 723, 724 [1998]). Common sense dictates that when using the actual sales method set forth in RPTL 702 (3) (b) (2) to challenge a 2002 assessment, as petitioner did here, one cannot rely upon sales that have yet to (and may never) occur. To do so essentially renders the entire process speculative. This interpretation comports with the position adopted by the Office of Real Property Services. "Where the petitioner opts to meet his burden of proof by the introduction of actual sales, the time periods within which the sales must have occurred differ between the two steps. In establishing the proper ratio of assessed value to the fair market value of property in general, the petitioner is limited to the twelve-month period immediately preceding the taxable status date of the assessing unit and not the fiscal year or the so-called tax year. . . . It is only in the second step of the process, where the

petitioner must prove the fair market value of his property, that sales after the taxable status date are considered" (7 Ops Counsel SBEA No. 7, at 17 [1979]).*

By tendering only proof of sales that occurred during calendar 2002, we agree with Supreme Court that petitioner failed to meet the first of his two-part burden—namely, establishing via acceptable proof the level of assessment for the town during the period in issue. That being the case, we need not reach petitioner's argument regarding the fair market value of his property. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* General Counsel for the Office of Real Property Services confirmed the continued viability of this opinion, noting only that an amendment to RPTL 301, providing that "[a]ll real property subject to taxation, and assessed as of a March first taxable status date, shall be valued as of the preceding first day of January," likely would result in looking at the sales occurring during the 12-month period immediately preceding the valuation, rather than the taxable status, date.